## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NANCY MARKHAM | CIVIL ACTION |
|---|---|
| v. | NO. 19-5464 |
| ETHICON, INC., JOHNSON & JOHNSON | |

## MEMORANDUM RE: MOTION TO REMAND

**Baylson, J.**                                                        **January 22, 2020**

### I.      Introduction

Was Falstaff a fraud?  This historical, theoretical and perhaps unanswerable question may have some resonance in this case where Plaintiff alleges she was injured by a defective pelvic mesh device, and filed a Complaint in state court which Defendants removed.

Both Shakespeare, in the *Merry Wives of Windsor*, and Verdi, for whom <u>Falstaff</u> was his last opera, probably couldn't answer the question.  The stories about Falstaff are well known and he would have barely, if at all, survived in the "Me Too" era.  He was a fictional buffoon and legend in medieval England, much noted for his pursuit of women.  In the *Merry Wives of Windsor*, Falstaff sent identical love letters to two women, Mistress Page and Mistress Ford, without disclosing that fact to either of them.  However, their husbands found out, and set upon a famous and funny series of events.  The opera version is very similar.  Was Falstaff "fraudulent" in sending two women identical love letters?  Later in the play, and also in the opera, Falstaff is summoned to witness an event in a forest and disguises himself by putting horns on to try to appear that he is an animal.  No double entendre there.  But was it "fraud?"  Was it deceptive?

Should Plaintiff's motion to remand this case to the Philadelphia Court of Common Pleas be denied because Plaintiff (and/or her counsel) is guilty of what has become known as "fraudulent joinder"?

What does this have to do with Falstaff? Well, in Falstaff and in this case, the concept of fraud is fraught with complexity. Fraud requires some showing of deception.[1] Does analysis of removal require a finding of "fraud?" I conclude there was no "fraud" but removal was appropriate because the joinder was not "proper" for other reasons.

## II.    Procedural History

In this case, Plaintiff sued Ethicon and Johnson & Johnson in the Philadelphia Court of Common Pleas, and also added as a defendant Secant, Inc., which is a citizen of Pennsylvania. Neither Plaintiff nor her lawyer made any allegations that warrant a conclusion that they were fraudulent or deceptive.

Plaintiff Nancy Markham alleges she was injured by a defective pelvic mesh device. Of the Defendants, only Secant is a Pennsylvania citizen. While the case was still in state court, Secant was quickly dismissed from the case by filing a special motion to dismiss under the Biomedical Access Assurance Act (BAAA), 21 U.S.C. § 1601 et seq., which expressly preempts most state-law claims against "biomaterials supplier[s]," id. § 1603(c). Court of Common Pleas

---

[1] See Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 250 (1951) ("If [plaintiff's] cause of action arises from fraud and deceit, it is a common-law action of which a federal court has no jurisdiction [unless the requirements of diversity jurisdiction are satisfied]"); Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 212 (3d Cir. 2002) ("One who fraudulently makes a misrepresentation of fact … for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.") (quoting Restatement (Second) of Torts); Sabo v. Metro. Life Ins. Co., 137 F.3d 185, 192 n.4 (3d Cir. 1998) (noting that Pennsylvania courts permit claims of "common law fraud and deceit" to be brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law). Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead fraud with "particularity."

Judge Arnold New, who has been supervising pelvic mesh cases in the Philadelphia Court of Common Pleas for several years, also ordered Plaintiff to file an amended complaint not naming Secant, and Plaintiff did so.[2]

Following the filing of the Amended Complaint, Defendants removed the case to this Court. ECF 1.[3]

Plaintiff has sought remand, ECF 3, and filed supplemental authority, ECF 6. Defendants responded. ECF 10. Plaintiff filed a reply brief. ECF 11. Defendants assert that the case is removable because Secant was "fraudulently joined." Plaintiff denies fraudulent joinder. The briefing of the parties debates this situation.[4]

Plaintiff argues that Secant's inclusion in the original complaint bars removal, because under 28 U.S.C. § 1441, diversity actions "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[5] See Markham Mot. Remand Mem. (ECF 3-1) at 7 (quoting 28 U.S.C. § 1441). Plaintiff argues that because there is no controlling authority governing the BAAA's application to Secant's role in pelvic mesh manufacturing, her claims against Secant were not frivolous, and Secant was "properly joined."

---

[2] See the Orders entered by Common Pleas Court Judge Arnold New, which are attached as Exhibit A, Exhibit B, and Exhibit D to Defendants' Response in Opposition. ECF 10-1, ECF 10-2, ECF 10-4.

[3] It appears that there are approximately 17 other cases involving quite similar issues currently pending in the Eastern District of Pennsylvania. See Defs. Response to Pl. Supp. Auth. (ECF 8) Appendix A.

[4] The Court notes that Defendants have also moved to dismiss for lack of jurisdiction or in the alternative, to transfer this case to the Western District of Washington, (ECF 7.) The Court will schedule a pretrial conference to discuss these pending motions.

[5] Defendants also have a pending Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Transfer Venue, ECF 7, which is not yet ripe for resolution.

Defendants generally respond that removal was appropriate because Secant was "fraudulently joined" to defeat removal. Defendants contend that Plaintiff knew that Secant would win its BAAA special motion to dismiss, because Secant has universally won such motions, both in federal multi-district litigation and Pennsylvania mass-tort litigation, and in the recent wave of similar lawsuits filed by Plaintiff's counsel.

For the reasons that follow, I conclude Secant was <u>not</u> properly joined, but I need not, and shall not, consider the concept of "fraudulent joinder."

## III. Legal Standard

Subject to limited exceptions, a plaintiff is entitled to choose between filing her suit in either federal or state court, as federal and state courts generally enjoy concurrent jurisdiction. See Claflin v. Houseman, 930 U.S. 130, 136 (1876) ("[I]f exclusive [federal court] jurisdiction [is] neither express nor implied, the State courts have concurrent jurisdiction."). However, a defendant may, at its option, remove an action originally filed in state court to federal court if the federal court would have had original jurisdiction over the litigation. 28 U.S.C. § 1441(a). There are two types of subject matter jurisdiction that may confer original jurisdiction: jurisdiction based on diversity of citizenship; and jurisdiction based on a federal question raised in the case.[6] Diversity jurisdiction exists where "the matter in controversy exceeds … $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. 1332(a)(1). Removal statutes should be "strictly construed against removal and all doubts should be resolved in favor of remand." In re Briscoe, 448 F.3d 201, 217 (3d Cir. 2006). The party who "urges jurisdiction on a federal

---

[6] Neither the Complaint nor the Notice of Removal suggest that federal question jurisdiction provides a basis for original jurisdiction, and thus, removal. Therefore, the Court need not detail the rules governing federal question jurisdiction or address this basis for removal in its analysis.

court"—in the case of removal, the removing defendant—"bears the burden of proving that jurisdiction exists." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

## IV. Discussion

### A. Fraudulent Joinder, Generally

If "fraudulent joinder" is an accurate description of the pleadings in a particular case, it is true that "fraudulent joinder" is rarely found. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)). Moreover, "all doubts should be resolved in favor of remand." A.S. ex rel. Miller v. SmithKline Beecham Corp., 769 F.3d 204, 208 (3d Cir. 2014) (quoting Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)).

Judges have experienced true cases of "fraudulent joinder," such as when the plaintiff alleges a defendant is a "citizen" of Pennsylvania when that allegation is false. Cf. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) ("[T]here is no suggestion by defendants that plaintiffs have falsely alleged their Pennsylvania citizenship or that of [the nondiverse defendants] [so] this is not a situation where 'there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.'"). However, we must use caution in applying the concept of "fraudulent joinder." Although the phrase has been used by many district courts, it is not necessary to find "fraud" to justify removal. Indeed, for anyone interested in textual supremacy, the text of the statute does not use the term "fraudulent joinder," but rather simply states that a case may not be removed if any of the parties in interest "properly joined and served" is a citizen of a state in which such action is brought.

Thus, the text provides that if a defendant has not been "properly joined" in the case, then removal is allowed. There is a big gap of facts and law between the concept of a defendant who is not "properly joined" and a defendant who is "fraudulently joined."

## B. Historical Basis of Fraudulent Joinder

The term "fraudulent joinder" appears to have originated in a series of Supreme Court decisions dating back to the early 20th century. See, e.g., Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921); Great N. Ry. Co. v. Alexander, 246 U.S. 276 (1918); Ill. Cent. R.R. Co. of State of Ill. v. Sheegog, 215 U.S. 308 (1909); Alabama Great S. Ry. Co. v. Thompson, 200 U.S. 206 (1906).

In an early case on fraudulent joinder, the Supreme Court concluded that where a plaintiff sues diverse and nondiverse defendants on a tort that gives rise to joint and several liability, there is "nothing … which suggests an attempt to commit a fraud upon the jurisdiction of the Federal courts." Alabama Great, 200 U.S. at 218. Similarly, in Illinois Central the Supreme Court held that "[t]he joint liability arising from the fault of the [diverse defendant] gave the plaintiff an absolute option to sue both [the diverse and nondiverse defendants] if he preferred, and no motive could make his choice a fraud." 215 U.S. at 318 (emphasis added).

In Wilson, the question presented, which related to the jurisdiction of the district court, was "[w]hether a [d]istrict [c]ourt, into which a case has been removed from a state court, may retain the same and proceed to its adjudication, or must remand it to the court whence it came, is a jurisdictional question the decision of which, where the jurisdiction is sustained, may be reviewed under [a statute since amended]." 257 U.S. at 96. The essence of the removal question arose because the defendant asserted that the plaintiff's "joinder of the [co-employee] was merely a sham or device to prevent an exercise of the [defendant's] right of removal." Id. at 94.

The Supreme Court held that "but for the joinder of the co-employee, the case plainly was one which the employer was entitled to have removed into the [d]istrict [c]ourt on the ground of diverse citizenship … [and that] it is apparent that the co-employee was joined as a defendant without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal." Id. at 98. The Court therefore held that the statements of the defendant "were sufficient, in that they disclosed that the joinder was a sham and fraudulent, and thence was not a legal obstacle to the removal or to the retention of the case by the [d]istrict [c]ourt." Id.

Wilson and the many other cases using the phrase "fraudulent joinder" to describe the plaintiff's addition of an in-state defendant with no connection to the case are instantly distinguishable.

Justice Holmes said it best in Illinois Central:

> [T]he mere epithet "fraudulent" in a petition does not end the matter. In the case of a tort which gives rise to a joint and several liability, the plaintiff has an absolute right to elect, and to sue the tort feasors jointly if he sees fit, no matter what his motive, and therefore an allegation that the joinder of one of the defendants was fraudulent, without other ground for the charge than that its only purpose was to prevent removal, would be bad on its face.

215 U.S. at 316.

## C. Unique Legal Status of Secant—Absolutely Immune From Liability

This case is different because there is an additional—and more rational—ground for allowing removal: the state court defendant was absolutely immune from being a defendant in this case.

Plaintiff has not cited any case where a defendant absolutely immune from liability won a remand back to the state court.

Given the many cases involving Secant as a defendant, its situation is unique. Congress has passed a specific statute—the BAAA—which gives Secant, and any other similarly situated corporation, immunity from suit.

Although the BAAA does not specifically prohibit a party from naming a biomaterial supplier as a defendant, it does specifically authorize the supplier to file a motion to dismiss, supported by affidavits articulating the grounds for immunity. The statute also allows a plaintiff to submit affidavits demonstrating certain facts but requires a court to grant the supplier's motion to dismiss with prejudice unless three limited exceptions apply. In this case, it appears Plaintiff did not submit any affidavits as the statute allowed, and none of the exceptions apply. These facts and legal conclusions were well established in the Court of Common Pleas in 2014 in a series of cases, by orders issued by Judge Arnold New, which are accurately described in Defendants' briefs and need not repeated at length here.

As Defendants have shown, for a number of years following Judge New's orders, there were no plaintiffs suing Secant in any pelvic mesh cases. This state of repose apparently disappeared in 2019 when current Plaintiff's counsel initiated a number of new cases in the Philadelphia Court of Common Pleas in which Secant was named, and which Defendants removed to this court.

**D. Why Joining Secant Made Joinder "Improper"**

The Court does not reach any concept of "fraudulent joinder" simply because the naming of Secant was a nullity and must be ignored. Secant was not "properly joined."

It is just the same as if a plaintiff had sued a judge in Pennsylvania, whether a state or federal judge. As is well known, judges have absolute immunity from liability. Is that a "proper joinder?" Of course not. Secant is in the same position as the improperly joined judge, and was

dismissed by the state court and its having been named as a defendant does not destroy the Defendants' right of removal.

For these reasons, I choose not follow my colleagues, Judge Beetlestone[7] and Judge Quiñones Alejandro,[8] remanding pelvic mesh complaints to the Philadelphia Court of Common Pleas, on grounds that they cannot conclude there was a "fraudulent joinder" of Secant. In my respectful opinion, they simply used the wrong test. I acknowledge there is much confusion in the judicial decisions, as a result of which the doctrine of "fraudulent joinder" masks otherwise improper joinders by casting them in terms of fraud.

Returning to the question from Shakespeare and Verdi, whether Falstaff was a "fraud" or not is a question which need not be answered—he was vain, low, rude and crude. Simply naming an immune defendant cannot be considered fraud, but it does allow removal.

The textual phrase "properly joined" is exclusively a legal phrase and when there is a statute of Congress prohibiting the joinder of Secant, as took place in the Court of Common Pleas of Philadelphia, the joinder of Secant is not fraud but it is truly improper.

In this regard, my conclusion is bolstered by the recent opinion of my colleague, Judge Kearney, in Monroe v. Ethicon, Inc., No. 19-5384, 2019 WL 7050130 (E.D. Pa. Dec. 23, 2019). Although Judge Kearney did not specify the absolute immunity of Secant, ipso facto, as grounds to allow removal, he did review in great and accurate detail the history of Secant as a party in

---

[7] Judge Beetlestone recently granted a nearly identical remand motion in one of the sister cases. See Newman v. Ethicon, Inc., No. 19-cv-4496, 2019 WL 6251194 (E.D. Pa. Nov. 21, 2019).
[8] Judge Quiñones Alejandro has also ruled on a motion to remand in three similar cases. In one, because the case was removed before Secant filed its BAAA motion to dismiss, the issues were slightly different. See Kalberer v. Ethicon, No. 19-cv-2195, ECF 11 (E.D. Pa. June 12, 2019). The other two decisions, both footnote orders, are essentially identical. See Pena v. Ethicon, Inc., No. 19-cv-4498, ECF 15 (E.D. Pa. Nov. 27, 2019); Murphy v. Ethicon, Inc., No. 19-cv-4495, 15 (E.D. Pa. Nov. 27, 2019).

Pennsylvania state courts and considered that plaintiffs did not have a "colorable" claim against Secant. Id. at *10. Judge Kearney's lengthy and scholarly opinion discusses the background of Secant and the rulings of the Court of Common Pleas. Judge Kearney, in footnote 55 of his opinion, states that the "use of 'fraudulent' to describe the issue is a misnomer. There is no need for fraud. No one claims deceptive conduct. The better description used by several courts is 'improper' joinder."[9] Id. at *9 n.55.

The Third Circuit has previously noted that the fraudulent joinder doctrine is often misnamed, and this is one of those cases.

### E. Why Do Some Counsel Want to Avoid Federal Courts?

A federal judge must wonder why some lawyers, usually representing plaintiffs, go to such lengths to avoid litigating in federal court, that they sometimes invite the label of "fraudulent joinder" when it does not truly apply. We must consider all of the following as possible reasons, and question ourselves as to whether some statutory or other remedies are necessary:

Do we have bad breath?

Are the Federal Rules of Civil Procedure too complicated and too expensive to follow?

Is our ability to send cases "flying across the country" to distant districts under Section 1404 too wild and uncontrollable?

Is the Judicial Panel on Multidistrict Litigation a villain of sorts for pretrial consolidation of thousands of mass tort cases before a single judge under Section 1407?

---

[9] As support for this proposition, Judge Kearney cites to 16 Moore's Federal Practice, § 107.52 n.14, n.14.1. Those notes discuss the Fifth Circuit's use of the term "improper joinder." See, e.g., Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004) ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred.")

Are the demographics of our jury pools too friendly to corporate defendants?

Are our appellate brethren, literally and legally above us, too friendly to defendants?

Are we more sympathetic to federal claims than to state law claims such that diversity jurisdiction should be abolished?

All of the above?

Would it be improper to suggest that the same plaintiffs' lawyers look at the huge treble damage awards that have taken place in securities/antitrust cases, or in Rule 23 class actions, sometimes as a result of a jury verdict but more often as a result of a settlement?

On the other hand, look at the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332, 1711–1715, where Congress very recently allowed removal of individual actions with a value of more than $5 million, regardless of citizenship.

Are we biased against diversity cases and was CAFA a mistake?

But back to this case. Plaintiff has not shown by any legal or common sense argument, that Secant was properly joined.

**F. Appellate Issues**

In their briefings on the motion to remand, the parties differ on their assertion that there is no appellate case authority upholding the dismissal of Secant in the manner in which it took place in the Court of Common Pleas. Plaintiff asserts that the preference for remand should be followed because of the lack of appellate authority. The Defendants argue that the lack of appellate authority supports their interpretation of the law.

In the absence of any appellate authority authoritatively interpreting the Biomaterials Statute, in the context of these facts, this Court believes that a district court judge is required to make a sound interpretation under the law which I have tried to do.

However, I note that an easy way for the parties to seek an appellate decision on this issue is to not settle one of the many of thousands of pelvic mesh cases that are pending across the United States, and instead for both parties to take an appeal so that one of them can raise this issue before an appellate court.

First, Defendants argue that the lack of appellate authority barring Plaintiff's claims against Secant, cited by Judge Beetlestone as evidence that the claims against Secant were not fraudulent, actually cuts against plaintiffs in similar cases. Defs. Response to Pl. Supp. Auth. at 2. Defendants contend that "[t]he complete absence of appeals, despite countless opportunities for appellate review . . . only underscores the weakness of Plaintiff's position." Id. at 3. On no record, this Court cannot fairly draw factual inferences from the (purported) lack of appeals in similar lawsuits. For example, many of those dismissals may have occurred in cases, like this one, with multiple defendants. The plaintiffs may have gotten the settlement they wanted out of the remaining defendants and so chose not to appeal.

Second, Defendants make the policy argument that Judge Beetlestone's opinion undermines Congress's purpose in passing the BAAA. "Congress enacted the BAAA to keep biomaterials suppliers out of lawsuits. . . . [Y]et Plaintiff's rule would perversely incentivize plaintiffs to name Secant as a defendant for the sole purpose of destroying federal jurisdiction." Id. at 12 (internal citations and quotations omitted). Accepting this argument would require the Court to implement broad statutory purposes in lieu of statutory text. The BAAA preempts state law remedies and provides Secant a special motion to dismiss to assert that preemption. Those are substantial protections, both of which Secant used in state court in this case. Defendants argue, essentially, that Congress's statutory scheme will be undermined unless Secant is shielded from having to use those Congressionally-bequeathed statutory protections.

12

**V. Conclusion**

Once the concept of fraudulent joinder is out of the case, it is clear to me that Secant was improperly joined and there was no bar in the defendant's removal of the case. Therefore, Plaintiff's Motion to Remand to State Court (ECF 3) is denied.

O:\CIVIL 19\19-5464 Markham v Ethicon\19cv5464 Memorandum re Motion to Remand.docx